IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DALE SAKAI, in his capacity as Trustee of the Fusako Sakai 1995 Revocable Trust under Trust Agreement dated June 27, 1995,<br><br>        Plaintiff,<br><br>   v.<br><br>MERRILL LYNCH LIFE INSURANCE COMPANY, et al.,<br><br>        Defendant. | No. C-06-2581 MMC<br><br>**ORDER GRANTING MOTION TO DISMISS; DENYING MOTION TO STRIKE; VACATING HEARING**<br><br>(Docket Nos. 20, 23) |

Before the Court are two motions filed July 13, 2006 by defendants Merrill Lynch Life Insurance Company and Merrill Lynch Life Agency, Inc.: (1) a motion to dismiss the First Amended Complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure; and (2) a motion to strike certain language and exhibits from the complaint, pursuant to Rule 12(f). Plaintiff Dale Sakai, in his capacity as trustee of the Fusako Sakai 1995 Revocable Trust, has filed separate oppositions to the motions; defendants have filed separate replies. Having considered the papers filed in support of and in opposition to the motions, the Court finds the matters appropriate for decision without oral argument, see Civil L.R. 7-1(b), VACATES the September 29, 2006 hearing, and rules as follows.

**BACKGROUND**[1]

Plaintiff Dale Sakai is the nephew of Fusako Sakai (hereafter, "Sakai"). (See First Amended Complaint ("FAC") ¶ 4.) On July 27, 1995, Sakai established the Fusako Sakai 1995 Revocable Trust under a Trust Agreement dated June 27, 1995 ("Trust"). (See id. ¶ 5.) Plaintiff alleges he is a duly appointed trustee of the Trust and authorized under the terms of the Trust to bring the instant action. (See id.) Plaintiff additionally alleges that, on or about August 1, 2002, Sakai executed a Durable Power of Attorney appointing plaintiff as her attorney in fact, and, according to plaintiff, has thereby authorized plaintiff to "act in her name, place, and stead, and for her use and benefit, and . . . to do and perform every act as fully as she might or could do." (See id. ¶ 6.) Plaintiff further alleges that Sakai has not revoked or amended the Durable Power of Attorney and that it remains in full force and effect. (See id.)

Sakai is 92 years old, is hearing impaired, and is presently suffering from senile dementia. (See id. ¶ 22.) Plaintiff alleges that "as a consequence of [ ] Sakai's age and physical and mental condition, she is, and at all times relevant herein was, incapable of properly caring for her property or transacting any business or fully understanding the nature or effects of her acts." (See id.) Plaintiff nonetheless alleges Sakai acted as a trustee of the Trust until early 2003. (See id. ¶ 35.)

Defendants have acted as Sakai's financial and investment advisers and have managed her financial affairs for "numerous years." (See id. ¶ 23.) Plaintiff alleges defendants "knew or should have known . . . Sakai was hearing-impaired and suffering from senile dementia, and, consequently, that she was incapable of properly caring for her property or transacting business or fully understanding the nature or effects of her acts." (See id.)

Plaintiff alleges that in November 1990, defendants "influenced, persuaded, and

---

[1] Any statements of fact contained in this section are taken from the complaint and, for purposes of the instant motion only, are presumed true. See NL Industries, Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).

1  induced" Sakai to purchase an annuity ("Tandem annuity") issued by Tandem Life
2  Insurance Company ("Tandem") for a premium of $100,000.  (See id. ¶ 25.)  In November
3  1995, defendants "influenced, persuaded, and induced" Sakai to surrender the Tandem
4  annuity in exchange for a "Flexible Premium Individual Variable Annuity" ("Merrill annuity")
5  issued by Defendants.  (See id. ¶ 26.)

6        The terms and conditions of the Merrill Annuity provided that the premium would be
7  allocated to certain "variable accounts," any income from the variable accounts would
8  accumulate until July 1, 1999 ("Annuity Date"), and, on the Annuity Date, defendants would
9  either (1) begin making monthly payments to Sakai for a guaranteed period of ten years
10 and thereafter as long as she lived, or, (2) if Sakai so elected no later than 30 days before
11 the Annuity Date, pay her, in a lump sum, the value of the Merrill Annuity on the Annuity
12 Date.  (See id. ¶ 29.)  The terms and conditions of the Merrill Annuity also provided that if
13 Sakai elected to receive monthly payments, but died within the ten-year guaranteed
14 payment period, her named beneficiaries would receive the present value of any remaining
15 payments, but if she died after the ten-year guaranteed payment period, defendants would
16 have no further obligation to her estate or her named beneficiaries.  (See id.)

17       In May 1999, Sakai informed defendants that she intended to withdraw all of her
18 funds from the Merrill Annuity on the Annuity Date.  (See id. ¶ 31.)  Defendants "dissuaded"
19 Sakai from withdrawing her funds from the Merrill Annuity in a lump sum and instead
20 "influenced, persuaded, and induced" her to accept monthly payments.  (See id.)
21 Defendants further "influenced, persuaded, and induced" Sakai to shorten the guaranteed
22 payment period from ten years to five years.  (See id.)  Since that time, Sakai has been
23 receiving monthly payments from defendants in the amount of $3024.96, less federal and
24 state taxes.  (See id.)

25       In 2004, Sakai and plaintiff asked defendants to transfer title and ownership of the
26 Merrill Annuity from Sakai to the Trust and, in May 2004, defendants assured them such
27 action would be taken.  (See id. ¶ 28.)  In May 2006, however, after the filing of the initial
28 complaint in the instant action, defendants denied they ever agreed to transfer title and

ownership of the Merrill Annuity from Sakai to the Trust.  (See id.)  Plaintiff alleges: "[I]n order to make it clear the [Merrill] Annuity is an asset of the trust estate, [ ] Sakai, by Plaintiff acting as her attorney in fact, executed an amendment to the Trust stating that the [Merrill] Annuity is included among the assets of the trust estate, and that title and ownership of the [Merrill] Annuity should be deemed to have been transferred from [ ] Sakai to the Trust as of May 4, 2004."  (See id. ¶ 28.)

Plaintiff alleges defendants knew or should have known that the Merrill Annuity was "an entirely unsuitable and inappropriate investment" for Sakai because (1) if the owner makes a withdrawal from the annuity before a specified date, variable annuities generally require the owner to pay a "deferred sales charge" equal to a percentage of the amount withdrawn and, thus, variable annuities are relatively illiquid investments; (2) the expenses charged are relatively high when compared to the costs and expenses of similar investments such as mutual funds; (3) income from a variable annuity is taxed at the annuity owner's ordinary income tax rate rather than at the more favorable capital gains rate and, as a result, Sakai has paid more taxes than she would have paid if she had taken a lump sum payment from the Tandem annuity and invested it differently, such as in mutual funds; (4) variable annuities do not receive a "stepped-up basis" on the death of the annuity owner; (5) if Sakai died during the ten-year guaranteed payment period, her named beneficiaries would receive only the present value of any remaining payments; and (6) if Sakai died after the ten-year guaranteed period, defendants would have no further obligation to her estate or her named beneficiaries.  (See id. ¶ 30.)

Plaintiff further alleges defendants knew or should have known that advising Sakai to receive payments from the Merrill Annuity over a guaranteed period of five years, rather than take a lump sum payment, was "an entirely unsuitable and inappropriate investment" for Sakai because (1) any income from the Merrill Annuity is taxed at the ordinary income tax rate rather than at the more favorable capital gains rate and, as a result, Sakai has paid more taxes that she would have paid if she had taken a lump sum payment and invested it differently, such as in mutual funds; (2) if Sakai died within the five-year guaranteed

1 payment period, her named beneficiaries would receive only the present value of any
2 remaining payments; (3) if she died after the five-year guaranteed payment period,
3 defendants would have no further obligation to her estate or her named beneficiaries; and
4 (d) the State of California "would charge a so-called 'premium tax' of several thousand
5 dollars." (See id. ¶ 34.)

6 Plaintiff alleges that defendants stand in a fiduciary relationship with Sakai and that,
7 consequently, defendants were obligated "to strive to their utmost ability to provide
8 competent and disinterested financial and investment advice to her in a fair, just, and
9 equitable manner, and to act in the furtherance of only her best interests." (See id. ¶ 24.)
10 Plaintiff further alleges that in selling the Tandem annuity to Sakai, and in persuading her to
11 not take a lump sum payment on the Annuity Date, defendants acted in their own best
12 interests and not in the best interests of Sakai. (See id. ¶¶ 46, 48.)

13 Plaintiff asserts the following causes of action against defendants: (1) violation of the
14 California Elder Abuse and Dependent Adult Civil Protection Act ("Elder Abuse Act"),
15 California Welfare and Institutions Code § 15600, et seq.; (2) fraud and deceit; (3) breach
16 of fiduciary duty; and (4) unfair competition in violation of § 17200 of the California
17 Business and Professions Code.

## LEGAL STANDARD

19 A motion to dismiss under Rule 12(b)(6) cannot be granted unless "it appears
20 beyond doubt that the plaintiff can prove no set of facts in support of his claim which would
21 entitle him to relief." See Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Dismissal can be
22 based on the lack of a cognizable legal theory or the absence of sufficient facts alleged
23 under a cognizable legal theory. See Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699
24 (9th Cir. 1990).

25 Generally, a district court, in ruling on a Rule 12(b)(6) motion, may not consider any
26 material beyond the pleadings. See Hal Roach Studios, Inc. v. Richard Feiner And Co.,
27 Inc., 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990). Material that is properly submitted as part
28 of the complaint, however, may be considered. See id. Documents whose contents are

alleged in the complaint, and whose authenticity no party questions, but which are not physically attached to the pleading, also may be considered. See Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994). In addition, the Court may consider any document "the authenticity of which is not contested, and upon which the plaintiff's complaint necessarily relies," regardless of whether the document is referred to in the complaint. See Parrino v. FHP, Inc., 146 F.3d 699, 706 (9th Cir. 1998). Finally, the Court may consider matters that are subject to judicial notice. See Mack v. South Bay Beer Distributors, Inc., 798 F.2d 1279, 1282 (9th Cir. 1986).

In analyzing a motion to dismiss, the Court must accept as true all material allegations in the complaint, and construe them in the light most favorable to the nonmoving party. See NL Industries, 792 F.2d at 898. The Court may disregard factual allegations if such allegations are contradicted by the facts established by reference to exhibits attached to the complaint. See Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987). Conclusory allegations, unsupported by the facts alleged, need not be accepted as true. See Holden v. Hagopian, 978 F.2d 1115, 1121 (9th Cir. 1992).

**DISCUSSION**

**A. Real Party in Interest**

Defendants' first argument in support of dismissal is that plaintiff is not the real party in interest and thus cannot bring any of the claims asserted herein. See Fed. R. Civ. P. 17(a) (requiring that every action be brought "in the name of the real party in interest"). In particular, defendants argue there is no allegation that plaintiff or the Trust owns the Merrill Annuity, and that plaintiff cannot assert the rights of Sakai with respect to such annuity.

Rule 17 of the Federal Rules of Civil Procedure expressly provides that a "trustee of an express trust . . . may sue in that person's name without joining the party for whose benefit the action is brought[.]" See id. Here, plaintiff alleges he is a trustee of the Trust. (See FAC ¶ 5.) Plaintiff further alleges he and Sakai asked defendants to transfer the Merrill Annuity to the Trust, that defendants promised to do so, and that defendants thereafter did not do so. (See FAC ¶ 28.) Defendants cite no authority permitting them to

refuse an annuity owner's request to transfer an annuity to a trust and thereafter defeat suit by the trustee on the ground the trust does not own the annuity in dispute.  Additionally, Rule 17 provides that where an "incompetent person has a representative, such as a general guardian, committee, conservator, or other like fiduciary, the representative may sue or defend on behalf of the . . . incompetent person."  See Fed. R. Civ. P. 17(c).  Plaintiff alleges Sakai executed a durable power of attorney authorizing him to act on her behalf in all matters.  (See FAC ¶ 6.)

Defendants point out that plaintiff alleges Sakai "is, and at all times relevant herein was, incapable of properly caring for her property or transacting business or fully understanding the nature or effects of her acts."  (See id. ¶ 23.)  Defendants contend such allegation constitutes a judicial admission[2] that Sakai was incompetent and, thus, could not have made a valid appointment of plaintiff as a trustee or executed a valid power of attorney authorizing plaintiff to act on her behalf.  Under California law, however, "[o]ne may be incompetent to some extent and yet have sufficient mentality to comprehend the nature and effect of a [particular] transaction and therefore execute a valid contract."  See Hellman Commercial Trust & Savings Bank v. Alden, 206 Cal. 592, 603 (1929).  "In the absence of an adjudication of incompetency, it is necessary to allege and prove that the transaction was void for lack of understanding of its nature and effect."  Id.  Here, there is no allegation that Sakai was adjudicated incompetent prior to her appointment of plaintiff as a trustee or execution of the asserted durable power of attorney.

Accordingly, defendants are not entitled to dismissal on the ground that plaintiff is not the real party in interest.

**B. Statute of Limitations**

Defendants next argue all of plaintiff's claims are time-barred because the last asserted wrongful act occurred in May 1999, when defendants assertedly persuaded Sakai

---

[2] "Factual assertions in pleadings . . . , unless amended are considered judicial admissions conclusively binding on the party who made them."  American Title Ins. Co. v. Lacelaw Corp., 861 F.2d 224, 226 (9th Cir. 1988).

7

not to withdraw funds from the Merrill Annuity in a lump sum and to change the guaranteed payment term from ten years to five years. (See FAC ¶ 31.) The instant action was filed in April 2006, nearly seven years later.[3]

Plaintiff argues the running of the statute of limitations as to each of the asserted claims was delayed because a fiduciary relationship exists between defendants and Sakai. Defendants do not contend plaintiff has failed to adequately plead the existence of a fiduciary relationship between defendants and Sakai.[4] "Where a fiduciary obligation is present, the courts have recognized a postponement of the accrual of the cause of action until the beneficiary has knowledge or notice of the act constituting a breach of fidelity." Eisenbaum v. Western Energy Resources, Inc., 218 Cal. App. 3d 314, 324 (1990). A party in a fiduciary relationship "is entitled to rely on the statements and advice provided by the fiduciary," and, consequently, "the limitations period does not begin to run until plaintiff actually discovers the facts constituting the cause of action, even though the means for obtaining the information are available." See id. at 324, 325 (internal quotations and citations omitted).

Where a plaintiff relies on the above-referenced discovery rule, such plaintiff "has the burden of pleading . . . that he did not make the discovery" until some date within the applicable limitations period. See, e.g., Hobart v. Hobart Estate Co., 26 Cal. 2d 412, 437 (1945); see also id. at 441 ("[P]laintiff must allege . . . facts showing the time and surrounding circumstances of the discovery and what the discovery was."). Here, plaintiff's allegations are insufficient. Although plaintiff alleges Sakai was at all relevant times "incapable of properly caring for her property or transacting any business or fully

---

[3] The statute of limitations for fraud is three years. See Cal. Code Civ. Proc. § 338(d). The statute of limitations for breach of fiduciary duty and for unfair competition in violation of § 17200 of the Business and Professions Code is four years. See Stalberg v. Western Title Ins. Co., 230 Cal. App. 3d 1223, 1231 (1991); see also Cal. Bus. & Prof. Code § 17208. At least one court has held the statute of limitations for violation of the Elder Abuse Act is two years, albeit with respect to factual allegations different than those at issue here. See Benun v. Superior Court, 123 Cal. App. 4th 113, 125-36 (2004).

[4] See, e.g., Duffy v. Cavalier, 215 Cal. App. 3d 1517, 1535 (1990) (noting existence of fiduciary duty "in every broker-customer relationship").

8

understanding the nature or effects of her acts," (see FAC ¶ 22), he also alleges Sakai acted as a trustee of the Trust until early 2003, (see id. ¶ 35), and there is no specific allegation as to when, if ever, Sakai learned of the assertedly unsuitable nature of her transactions with defendants. Plaintiff alleges that, within two years of the filing of the instant action, he formed the opinion that the Merrill Annuity was an unsuitable investment for Sakai. (See id. ¶ 37.) In the absence of an allegation that Sakai previously was unaware of the asserted unsuitability of her investment, such allegation is insufficient, however, even assuming all applicable statutes of limitations are two years or longer. See, e.g., Salaman v. Bolt, 74 Cal. App. 3d 907, 919 (1977) (noting "[a]s a general rule, the assignee of a chose in action stands in the shoes of his assignor, taking his rights and remedies subject to any . . . defenses existing against the assignor").

Accordingly, defendants are entitled to dismissal of the instant action on the ground that it is time-barred as pleaded, and plaintiff will be afforded leave to amend the complaint to allege when, if ever, Sakai became aware of the asserted unsuitability of the subject investment.

**C. Adequacy of Factual Allegations**

Defendants contend plaintiff fails to allege facts sufficient to state a claim in any of the asserted causes of action.

### 1. Elder Abuse Act

Plaintiff alleges that by engaging in the above-referenced transactions with Sakai, defendants engaged in financial abuse in violation of the Elder Abuse Act, and that Sakai has sustained damages as a result thereof in an amount exceeding $75,000. (See FAC ¶¶ 51-52.) Defendants move to dismiss plaintiff's claim for violation of the Elder Abuse Act, on the ground plaintiff has not alleged defendants have taken, secreted, appropriated, or retained Sakai's property.

The Elder Abuse Act provides that "financial abuse" occurs when a person or entity does any of the following:

(1) Takes, secretes, appropriates, or retains real or personal property of an

9

elder or dependent adult to a wrongful use or with intent to defraud, or both.

(2) Assists in taking, secreting, appropriating, or retaining real or personal property of an elder or dependent adult to a wrongful use or with intent to defraud, or both.

See Cal. Welf. & Inst. Code § 15610.30(a). "Wrongful use" is established "if, among other things, the person or entity takes, secretes, appropriates or retains possession of property in bad faith." See id. § 15610.30(b). "A person or entity shall be deemed to have acted in bad faith if the person or entity knew or should have known that the elder or dependent adult had the right to have the property transferred or made readily available to the elder or dependent adult or to his or her representative." See id. § 15610.30(c).

Defendants argue the allegations of the complaint demonstrate that defendants have complied with their obligations to Sakai under the Merrill Annuity and that, as a result, plaintiff cannot show defendants have taken, secreted, appropriated, or wrongfully retained any of Sakai's property. The complaint is not based on an allegation that defendants failed to comply with the terms of the Merrill Annuity, however, but, rather, on the ground that defendants sold Sakai the Merrill Annuity and thereafter persuaded her to not withdraw her money, in breach of their fiduciary duties to her. (See FAC ¶¶ 46-49.) Defendants fail to cite any authority suggesting that such acts do not constitute the taking of property for a wrongful use, within the meaning of the Elder Abuse Act.

Accordingly, defendants are not entitled to dismissal of the Elder Abuse Act claim on the ground plaintiff has failed to state a claim.

**2. Fraud**

Defendants move to dismiss plaintiff's fraud claim on the ground plaintiff has failed to plead the claim with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure.

Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." See Fed. R. Civ. P. 9(b). Rule 9(b) serves to give defendants adequate notice to allow them to defend against a charge of fraud and to deter the filing of complaints

10

as a pretext for the discovery of unknown wrongs, to protect defendants from the harm that comes from being subject to fraud charges, and to prohibit plaintiffs from "unilaterally imposing upon the court, the parties, and society enormous social and economic costs absent some factual basis." See In re Stac Electronics Sec. Litig., 89 F.3d 1399, 1405 (9th Cir. 1996) (quoting Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985)). To comply with Rule 9(b), a plaintiff must plead "with particularity" the time and place of the fraud, the statements made and by whom made, and an explanation of why or how such statements were false or misleading when made. See In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1547-49 and n.7 (9th Cir. 1994) (en banc).

The elements of fraud are: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." See Lazar v. Superior Court, 12 Cal. 4th 631, 638 (1996). Defendants argue plaintiff has failed to allege with the requisite particularity (1) any false statement by any named individual; (2) defendants' knowledge of the falsity of any such representation; (3) defendants' intent to defraud Sakai or plaintiff; (4) reliance by Sakai or plaintiff on any misrepresentation; and (5) any damages suffered by Sakai or plaintiff.

Defendants are correct that plaintiff has not alleged what, specifically, Sakai was told about the Merrill Annuity, let alone who made any such statements, when and where such statements were made, or why such statements were false or misleading at the time they were made. Accordingly, plaintiff has not pleaded the "circumstances constituting fraud" with the requisite particularity. See GlenFed, 42 F.3d at 1547-49 and n.7. Further, although plaintiff correctly points out that Rule 9(b) expressly provides that intent and knowledge "may be averred generally," see Fed. R. Civ. P. 9(b), plaintiff has not even generally alleged that defendants knew their statements were false and misleading or that

defendants acted with intent to defraud.[5]

Accordingly, defendants are entitled to dismissal of plaintiff's fraud claim, and plaintiff will be afforded leave to amend.

### 3. Breach of Fiduciary Duty

Defendants move for dismissal of plaintiff's breach of fiduciary duty claim, on the ground plaintiff has not alleged defendants breached any fiduciary obligation to Sakai.

In response, plaintiff states that the "grounds for breach of fiduciary duty are the same as the grounds for the claim of fraud," with the additional allegation that the parties were in a fiduciary relationship. (See Opp. at 20:5-10.) Where, as here, fraud is not a necessary element of a claim, but the plaintiff chooses nonetheless to rely entirely on a course of assertedly fraudulent conduct as the basis of the claim, "the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." See Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103-04 (9th Cir. 2003). As noted, defendants do not take issue with plaintiff's allegation, (see FAC ¶ 24), that defendants were in a fiduciary relationship with Sakai. As further noted, however, plaintiff has not alleged the asserted fraud with the particularity required by Rule 9(b).

Accordingly, as plaintiff states the claim for breach of fiduciary duty is based entirely on fraud, defendants are entitled to dismissal of the breach of fiduciary duty claim, and plaintiff will be afforded leave to amend.

### 4. Section 17200

Defendants move to dismiss plaintiff's § 17200 claim on two grounds. First, relying on Bowen v. Ziasun Technologies, Inc., 116 Cal. App. 4th 777 (2004), defendants argue § 17200 does not apply to securities transactions and, consequently, that it has no

---

[5] The Court is aware of no authority holding that Rule 9(b) requires allegations of reliance and damages to be pleaded with particularity. Cadlo v. Owens-Illinois, Inc., 125 Cal. App. 4th 513 (2004), on which defendants rely for the proposition that reliance must be pleaded with particularity, does not address the requirements of Rule 9(b). Here, plaintiff has alleged that Sakai relied on defendants' advice, (see FAC ¶ 24), and that, as a result thereof, she sustained damages in an amount exceeding $75,000, (see id. ¶ 59.)

1. application to the sale of annuities. Although <u>Bowen</u> held § 17200 does not apply to
2. securities transactions, <u>see</u> <u>id</u>. at 786, <u>Bowen</u> did not involve the sale of annuities. Prior
3. California case law has expressly held § 17200 is applicable to the sale of annuities. <u>See</u>
4. <u>People ex. rel. Lockyer v. Fremont Life Ins. Co.</u>, 104 Cal. App. 4th 508, 511 (2002)
5. (affirming judgment that insurance company violated § 17200 in sale of annuities).
6. Defendants next argue the § 17200 claim is subject to dismissal because plaintiff has
7. alleged no damages resulting from defendants' conduct. As noted, however, plaintiff
8. expressly alleges damages in an amount exceeding $75,000. (<u>See</u> FAC ¶ 59.)
9.     Accordingly, defendants are not entitled to dismissal of the § 17200 claim.
10.     **D. Motion to Strike**
11.     Defendants move to strike paragraphs 7, 14-18, 20, 30 and 34 from the First
12. Amended Complaint, as well as Exhibits 1 and 2 thereto, pursuant to Rule 12(f) of the
13. Federal Rules of Civil Procedure, on the ground said paragraphs and exhibits are
14. immaterial to any cause of action asserted.
15.     Rule 12(f) provides, in relevant part, that "the court may order stricken from any
16. pleading any . . . redundant, immaterial, impertinent, or scandalous matter." <u>See</u> Fed. R.
17. Civ. P. 12(f). "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time
18. and money that must arise from litigating spurious issues by dispensing with those issues
19. prior to trial. . . ." <u>Fantasy, Inc. v. Fogerty</u>, 984 F.2d 1524, 1527 (9th Cir. 1993) (citation
20. omitted), <u>rev. on other grounds</u>, 510 U.S. 517 (1994). "'Immaterial' matter is that which has
21. no essential or important relationship to the claim for relief or the defenses being pleaded."
22. <u>See</u> <u>id</u>. "Motions to strike are generally not granted unless it is clear that the matter to be
23. stricken could have no possible bearing on the subject matter of the litigation." <u>LeDuc v.</u>
24. <u>Kentucky Central Life Ins. Co.</u>, 814 F. Supp. 820, 830 (N.D. Cal. 1992).
25.     The matter defendants seek to strike consists of allegations that a parent company
26. of defendants is regulated by the National Association of Securities Dealers ("NASD"), that
27. the NASD and the Securities Exchange Commission ("SEC") have expressed concerns
28. about the marketing of variable annuities to senior citizens, that various financial websites

1 and publications have criticized variable annuities as unsuitable investments for many
2 investors, and that the Merrill Annuity was an unsuitable investment for Sakai.  (See FAC
3 ¶¶ 7, 14-18, 20, 30, 34.)  The exhibits at issue consist of an NASD notice to its members
4 with respect to the marketing of variable annuities, and a joint NASD/SEC report with
5 respect to the sale of variable annuities.  Such allegations and exhibits are not unrelated to
6 the subject matter of the claims at issue and, consequently, will not be stricken from the
7 complaint.

## CONCLUSION

For the reasons set forth above,

1. Defendants' motion to dismiss is hereby GRANTED.  No later than twenty days from the date of this order, plaintiff may file an amended complaint addressing the deficiencies noted.

2. Defendants' motion to strike is hereby DENIED.

This order terminates Docket Nos. 20 and 23.

**IT IS SO ORDERED.**

Dated: September 26, 2006

MAXINE M. CHESNEY
United States District Judge