IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DALE SAKAI, in his capacity as Trustee of the Fusako Sakai 1995 Revocable Trust under Trust Agreement dated June 27, 1995,<br><br>    Plaintiff,<br><br>  v.<br><br>MERRILL LYNCH LIFE INSURANCE COMPANY, et al.,<br><br>    Defendants / | No. C-06-2581 MMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

    In his Third Amended Complaint ("TAC"), plaintiff Dale Sakai ("plaintiff") brings three causes of action: (1) violation of the California Elder Abuse and Dependant Adult Civil Protection Act, Cal. Welf. & Inst. Code § 15600, et seq.; (2) breach of fiduciary duty; and (3) violation of the California Unfair Competition Law , Cal. Bus. & Prof. Code § 17200, et seq. Plaintiff's claims, in each instance, are based on plaintiff's allegation that Fusako Sakai was improperly encouraged in 1995 to exchange a fixed annuity for a variable annuity and thereafter, in 1999, to allow that contract to annuitize.

    Now before the Court is defendants' Merrill Lynch Life Insurance Company ("Company") and Merrill Lynch Life Agency, Inc's ("Agency") (collectively, "defendants") motion for summary judgment or, in the alternative, for summary adjudication, filed November 30, 2007. On January 7, 2008, the Court found the matter appropriate for

resolution without oral argument and granted defendants' motion for summary judgment on the grounds that each of plaintiff's claims was barred by the statute of limitations. On January 22, 2008, plaintiff filed a motion for reconsideration of the Court's January 7 order. The matter came on regularly for hearing on February 29, 2008. On March 7, 2008, the Court granted the motion to reconsider as to the statute of limitations, vacated its January 7 order, and took the remainder of defendants' motion for summary judgment under submission. Having considered the papers filed in support of and in opposition to defendants' motion, and the arguments of counsel, the Court rules as follows.

## LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that a court may grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(c).

The Supreme Court's 1986 "trilogy" of Celotex Corp. v. Catrett, 477 U.S. 317 (1986), Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), and Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574 (1986), requires that a party seeking summary judgment show the absence of a genuine issue of material fact, which burden may be fulfilled by a showing that "there is an absence of evidence to support the nonmoving party's case." See Celotex at 322-23, 325.

Once the moving party has met its burden, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." See id. at 324 (internal quotation and citation omitted). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. "If the [opposing party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Liberty Lobby, 477 U.S. at 249-50 (citations omitted). "[I]nferences to be drawn from the underlying facts," however, "must be viewed in the light

2

1  most favorable to the party opposing the motion." See Matsushita, 475 U.S. at 587

2  (internal quotation and citation omitted).

3  **DISCUSSION**

4  **A.  Breach of Fiduciary Duty**

5       As defendants correctly note, an insurer does not, under California law,

6  automatically owe a fiduciary duty to an insured.  Nevertheless, "[e]ven though as a matter

7  of California law an insurer does not owe an insured a fiduciary duty, the insurer-insured

8  relationship does not prevent the formation of a fiduciary relationship based on other acts

9  or representations."  In re Conseco Ins. Co. Annuity Mktg. & Sales Practices Litig., 2007

10  WL 486367 (N.D. Cal.) at *7.  An insurer may, for example, "hold [itself] out as acting in a

11  position of trust" or otherwise conduct itself in "a manner that would lead to imposition of a

12  fiduciary relationship upon it."  See id.

13       Here, however, plaintiff has not shown defendants themselves did anything or held

14  themselves out in a manner that would create a fiduciary duty to Fusako Sakai.  Rather,

15  plaintiff contends, defendants owe a fiduciary duty because the variable annuity sold to

16  Fusako Sakai is a security regulated by federal securities laws, and that a fiduciary duty

17  exists in every broker-customer relationship.  Plaintiff's argument fails because, even if

18  defendants are considered brokers, "the scope of a broker's fiduciary duty depends on the

19  nature of the broker/customer relationship."  See Apollo Capital Fund, LLC v. Roth Capital

20  Partners, LLC, 158 Cal.App.4th 226, 245 (2007).  As the California Court of Appeal pointed

21  out in Apollo, the rule that a stockbroker owes a fiduciary duty to his or her customer stems

22  from cases in which "the stockbroker was an adviser to the customer about investment

23  decisions."  See id. (quoting Brown v. California Pension Adm'rs & Consultants, Inc. 45

24  Cal.App.4th 333, 348 (1996)).  Here, defendant insurance companies were not financial

25  advisors to Fusako Sakai, nor did they maintain with her a confidential relationship that

26  otherwise would give rise to a fiduciary duty.  See id. (sustaining demurrer to breach of

27  fiduciary duty claim where plaintiff failed to allege facts showing existence of stockbroker-

28  buyer relationship or existence of confidential relationship otherwise giving rise to fiduciary

1  duties).  Consequently, defendants owed no direct fiduciary duty to Fusako Sakai and
2  cannot be found directly liable for a breach of fiduciary duty.

3  Defendants have not shown, however, that they cannot be held vicariously liable for
4  breach of fiduciary duty, based on the actions of Louis Tiano ("Tiano"), the individual
5  through whom Fusako Sakai purchased the annuity in question and effectuated her
6  decisions with respect thereto.

7  "[A] principal is responsible to third persons for the negligence of his agent in the
8  transaction of the business of the agency, including wrongful acts committed by such agent
9  in and as a part of the transaction of such business . . . ."  See Cal. Civ. Code § 2338 ; see
10 also Clark Equipment Co. v. Wheat, 92 Cal.App.3d 503, 519-20 (1979) (holding employer's
11 liability under doctrine of respondeat superior extends to intentional torts of employee
12 committed within scope of employment).

13 Plaintiff characterizes Tiano as Fusako Sakai's "financial advisor" at the brokerage
14 house of Merrill Lynch Pierce Fenner & Smith, Inc., (see Pl's. Opp'n to Mot. for Summ. J. at
15 1:8-12); defendants, in their moving papers, characterize Tiano as Fusako Sakai's "broker,"
16 (see Defs.' Mot. for Summ. J. at 4:7), and, in their answer, admit he was employed at the
17 brokerage house as a "financial advisor," (see Harrington Decl. Ex. 1 ¶ 10).  Plaintiff further
18 asserts that Tiano acted as defendants' agent, and defendants concede Tiano was
19 authorized to "act on behalf of Merrill Lynch Agency in the performance of all insurance
20 services" at issue herein, see id.  The issue thus presented is whether sufficient evidence
21 exists to support a prima facie case of breach of fiduciary duty by Tiano.  See, e.g.,
22 Celotex, 477 U.S. at 331-32 (holding summary judgment appropriate where moving party
23 establishes nonmoving party has insufficient evidence to establish essential element of
24 claim).

25 The fiduciary relationship imposes a duty to act "in the highest good faith" toward the
26 client, and fiduciary duties "must be exercised with the utmost good faith and integrity."
27 Duffy v. King Cavalier, 215 Cal.App.3d 1517, 1531 (1989) (quoting Twomey v. Mitchum,
28 Jones & Templeton, Inc., 262 Cal.App.2d 690, 708-09 (1968)).  Where a financial advisor

or broker provides advice about investments, a fiduciary duty is breached when the client is encouraged to purchase an investment with a level of risk that is not appropriate for the client, or is not properly informed of the speculative nature of an investment. See Vucinich v. Paine, Webber, Jackson & Curtis, Inc., 803 F.2d 454, 460-61 (9th Cir. 1986) (holding broker had fiduciary duty to fully inform client of nature and risks of selling short, "in terms capable of being understood by someone of [client's] education and experience"). A fiduciary must provide a proper disclosure and explanation of the investment activity, and should warn a client to exercise caution if an investment presents a greater risk than tolerable, given the client's goals and circumstances. See id.; see also City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 68 Cal.App.4th 445, 484 (1998) (holding allegation that brokerage firm encouraged client to undertake "imprudent and unsuitable" investment program that included "speculative investments in extremely volatile securities, risky transactions in highly leveraged interest-bearing instruments, and excessive commissions" sufficient to state a claim for breach of fiduciary duty); Duffy, 215 Cal.App.3d at 1532 (holding broker has fiduciary duty: "(1) to ascertain that the investor understands the investment risks in the light of his or her actual financial situation; (2) to inform the customer that no speculative investments are suitable if the customer persists in wanting to engage in such speculative transactions without the stockbroker's being persuaded that the customer is able to bear the financial risks involved; and (3) to refrain completely from soliciting the customer's purchase of any speculative securities which the stockbroker considers to be beyond the customer's risk threshold") (emphasis in original).

Although the majority of cases concerning breach of fiduciary duty in this context focus on whether the investment in question involved an inappropriate level of risk for the client and whether the client was adequately warned about such risk, the question of whether an investment is inappropriate for other reasons has been considered, and allegations of such impropriety have been found sufficient to support a claim for breach of fiduciary duty. See Migliaccio v. Midland Nat'l Life Ins. Co., 436 F.Supp.2d 1095, 1098, 1108 (C.D. Cal. 2006) (holding complaint alleging senior citizens were sold "deferred

annuities that matured after [purchasers'] actuarial life expectancies," and that providers of annuities had "trained their sales agents to lure senior citizens into their confidence by offering assistance with estate and financial planning, ultimately to sell them improper annuities" was sufficient to state claim for breach of fiduciary duty).

Here, plaintiff relies on the declarations of two experts, Jay Crom ("Crom") and Craig McCann ("McCann"). Crom, a certified public accountant, calculates that "as of September 30, 2007, damages arising from rolling over the fixed annuity into a variable annuity, rather than liquidating the annuity, in November 1995 amount to $148,076." (See Crom Decl. Ex. 1 at 3.) Crom additionally opines that Fusako Sakai "was exposed to excessive risk of loss of principal at the time of the annuity reinvestment in 1995 and as a result of the annuitization in 1999," and, further, that Fusako Sakai's "tax considerations were not adequately considered and that [she] incurred substantial income taxes on the annuity payments." (See id. at 4.)

McCann, who has a Ph.D. in economics, is a former financial economist with the Securities and Exchange Commission, and currently heads a securities litigation and consulting group. (See McCann Decl. Ex. A at 1-2.) In his expert report, McCann opines that "Tiano did not inquire enough about [Fusako] Sakai to determine that the 1995 exchange of an existing fixed annuity for a variable annuity . . . was in her best interest." (See id. at 3.) In McCann's opinion, "[t]he 1995 variable annuity was inappropriate for [Fusako] Sakai and would not have been recommended to her except by a conflicted or negligent broker." (Id. at 4.) It is McCann's further opinion that "Tiano did not inquire enough about [Fusako] Sakai in 1999 to determine that annuitizing the 1995 variable annuity was in her best interest." (Id.) McCann concludes that "[g]iven [Fusako] Sakai's circumstances, it was inappropriate to annuitize the variable annuity" and that such annuitization "would not have been recommended to her except by a conflicted or negligent broker." (See id.)

The above-referenced expert declarations are sufficient to raise a genuine issue of material fact as to whether Tiano breached his fiduciary duties to Fusako Sakai. Although

6

1   the facts concerning, and the propriety of, the sale of the annuity and subsequent
2   annuitization are in dispute, (see, e.g., Edmiston Decl. ¶ 2 & Vol. 1 Ex. A; Tiano Decl. &
3   Exs. A-D), given the record presented at this stage of the proceedings, the Court cannot
4   find as a matter of law that the opinions of plaintiff's experts are so lacking as to their
5   "factual basis, data, principles, methods, or their application," see Kumho Tire Co., Ltd. v.
6   Carmichael, 526 U.S. 137, 149 (1999), as to preclude their admission in evidence or a fact-
7   finder's reliance thereon.

8       Accordingly, defendants are not entitled to summary judgment on plaintiff's claim for
9   breach of fiduciary duty.

10  **B.  Elder Abuse**

11      Plaintiff's elder abuse claim alleges that defendants committed "financial abuse"
12  within the meaning of California's Elder Abuse and Dependent Adult Civil Protection Act
13  ("Elder Abuse Act" or "Act"). "Financial abuse" occurs when a person or entity "takes,
14  secretes, appropriates, or retains real or personal property of an elder or dependent adult
15  to a wrongful use or with intent to defraud, or both." Cal. Welf. & Inst. Code § 15610.30. A
16  "wrongful use" is deemed to have occurred when, "among other things," any of the above
17  actions is taken "in bad faith." See id. "Bad faith," in turn, is deemed to be have been
18  shown where "the person or entity should have known that the elder or dependent adult
19  had the right to have the property transferred or made readily available to the elder or
20  dependent adult or to his or her representative." See id.

21      Allegations that an insurer used "unsavory" marketing practices or other deceptive
22  practices in connection with the sale of annuities to senior citizens have been held sufficient
23  to state a claim for financial elder abuse. See, e.g., In re Conseco,
24  2007 WL 486367 at *5 (holding allegation that insurer's agents "bamboozled" plaintiff into
25  purchasing annuity that "subjected him to early withdrawal penalties, fees, and arbitrarily-
26  capped interest rates" sufficient to state claim for financial elder abuse); Negrete v. Fidelity
27  and Guaranty Life Ins. Co., 444 F.Supp.2d 998, 1002-03 (C.D. Cal. 2006) (holding
28  allegation of wrongful taking by stratagem, including "[defendant's] disregard of its internal

age exemption practice, resort to policyholder churning and use of deceptive trust mill operations . . . to facilitate deferred annuity sales to seniors for [defendant's] financial gain to the detriment of senior annuitants" sufficient to state claim under Elder Abuse Act).

As with the plaintiff's claim for breach of fiduciary duty, the declarations of plaintiff's experts suffice to raise a triable issue with respect to whether Fusako Sakai suffered detrimental tax consequences and other financial detriment by reason of inappropriate recommendations made as a result of professional negligence or a conflict of interest on the part of Tiano. (See Crom Decl. Ex. 1 at 4; McCann Decl. Ex. A at 4.)  Such showing is, in turn, sufficient to raise a triable issue as to whether those recommendations constituted a "wrongful use" of Fusako Sakai's personal property.   See Cal. Welf. & Inst. Code § 1560.30; Negrete, 444 F.Supp. 2d at 1002-03.

Defendants, citing Benun v. Superior Ct., 123 Cal.App.4th 113, 123-24 (2004), argue that plaintiff would have to prove "egregious" acts of abuse beyond mere negligence to succeed on an elder abuse claim.  Assuming "wrongful use," whether predicated on "bad faith" or other conduct, see Cal. Welf. & Inst. Code § 15610.30 (providing "wrongful use" includes, but is not limited to, actions taken in "bad faith"), requires something more than negligence, the declarations of plaintiff's experts, taken together, are sufficient to raise a triable issue as to Tiano's liability in that regard.  "Egregiousness," however, is a characterization that has been applied only in the context of physical abuse or neglect by health care providers.  See, e.g., Benun, 123 Cal.App.4th at 123-24; Covenant Care, Inc. v. Superior Ct, 32 Cal. 4th 771, 784 (2004).  Consistent with such distinction, the California Legislature, in 2004, amended § 15657 to remove any reference to financial abuse; financial abuse is now covered by § 15657.5, which provides, in part, for a lesser standard of proof and different prerequisites for recovery.  See Cal. Welf. & Inst. Code § 15657(a), (b); Cal. Welf. & Inst. Code § 15657.5 (a), (b).

Accordingly, defendant is not entitled to summary judgment on plaintiff's claim for financial elder abuse.

//

**C. Unfair Competition Law**

California's Unfair Competition Law ("UCL") is broadly worded to cover, inter alia, "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising. . . ." See Cal. Bus. & Prof. Code § 17200. Indeed, as defendants' note, "a business practice is unlawful if it is forbidden by law." (See Defs.' Mot. For Summ. J. at 25.) Here, plaintiff's claim under the UCL is derivative of plaintiff's claims for breach of fiduciary duty and elder abuse. As set forth above, plaintiff has raised a triable issue as to defendants' liability under those claims.[1]

Accordingly, defendants are not entitled to summary judgment on plaintiff's claim for violation of the UCL.

**D. Damages**

**1. Compensatory Damages**

Defendants argue plaintiff's claim for damages fails for the reasons that there is no legally cognizable loss and that plaintiff's showing is too speculative. In particular, defendants contend Fusako Sakai "suffered no losses from her annuity investments[,] given that her 1990 investment of $100,000 grew to $144,000 by November 1995 and then to $267,000 by July 1999," (see Defs.' Mot. for Summ. J. at 15:22-24), and that as of November 2007, Fusako Sakai had received "approximately $305,000" in monthly payments because of her 1999 decision to annuitize, (see id. at 15:25-27). Defendants further argue plaintiff cannot rely on Crom's expert opinion that Fusako Sakai incurred damages in the amount of $148,076, which opinion is based on a comparison of the

---

[1] The Court notes, however, that a question remains as to whether such claim is barred by the statute of limitations. Defendants assume application of the discovery rule, "solely for this motion." (See Defs.' Mot. for Summ. J. at 11:4.) The California Supreme Court has observed that the question of whether the discovery rule applies to claims under the UCL is "not settled." See Grisham v. Philip Morris U.S.A., Inc., 40 Cal.4th 623, 635 n.7 (2007) (citing Snapp & Assocs. Ins. Servs. v. Robertson, 96 Cal.App. 4th 884, 891 (2002) (holding discovery rule does not apply) and Mass. Mutual Life Ins. Co. v. Superior Court, 97 Cal.App.4th 1282, 1295 (2002) (holding discovery rule "probably" applies).) To date, a number of federal courts, applying California law, have found the discovery rule does not apply to such claims. See, e.g., Conseco, 2007 WL 486367 at *6; Suh v. Yang, 987 F.Supp. 783, 795 (N.D. Cal. 1997); Stutz Motor Car of America, Inc. V. Reebok Int'l Ltd., 909 F.Supp.1353, 1363 (C.D. Cal. 1995).

9

1 performance of plaintiff's investment in the subject variable annuity with the performance of
2 a mutual fund that tracked the same portfolio of stocks.  In particular, defendants argue,
3 [t]here is no evidence in this case that [Fusako] Sakai ever did or would have invested in
4 [that particular] mutual fund put forward by [p]laintiff as a benchmark among the many
5 thousands available." (See id. at 16:16-18.)

6 Defendants' first argument, that plaintiff did not lose her initial investment, is
7 unavailing.  Plaintiff's complaint in this lawsuit is not that the investments recommended by
8 Tiano had no value, but rather that they were less valuable than other investments that
9 were available and more suitable given her needs.

10 Defendants' second argument, that the comparison is too speculative, likewise is
11 unpersuasive.  California courts have upheld damages awards based on a "reasonable
12 estimate of the cause of the injury and of its amount, supported by the evidence," noting
13 that a wrongdoer "must bear the risk of uncertainty which his own wrong has created."  See
14 Hobbs v. Eichler, 164 Cal.App.3d 174, 196-197 (1985) (internal quotation and citations
15 omitted) (upholding damages award based on amount plaintiff would have received had
16 she retained her original portfolio instead of investing in unsuitable investment
17 recommended by defendant).  When a plaintiff switches into an unsuitable investment at
18 the behest of a financial advisor or broker, "[n]o one can say now what she might have
19 done with proper advice," and, consequently, some latitude is afforded a plaintiff who
20 attempts to prove a loss under such circumstances.  See Twomey v. Mitchum, Jones &
21 Templeton, Inc., 262 Cal.App.2d 690, 730-31 (1968) (rejecting defendants' argument
22 therein that damages award based on what plaintiff would have received had she retained
23 original portfolio and not been advised to "switch into" unsuitable investment was "too
24 conjectural and speculative").  "[T]he general principle inherent in the recovery of damages
25 for loss of prospective profits is that the evidence must make reasonably certain their
26 nature, occurrence and extent.  Piscitelli v. Friedenberg, 87 Cal.App.4th 953, 989 (2001)
27 (internal quotation and citation omitted).  Put another way, "such evidence must be of
28 reasonable reliability."  Id.  Here, defendants have not shown that, as a matter of law, a

comparison between an investment in the subject variable annuity and an investment in a portfolio tracking the variable annuity's investments would not offer a reasonably reliable assessment of the losses Fusako Sakai incurred.

Defendants do, however, make a more persuasive argument with respect to the scope of recovery, specifically, with respect to the types of damages available under the Elder Abuse Act where liability is predicated on vicarious, as opposed to direct, liability.

Section 15657.5, as defendants point out, contains an express provision limiting a plaintiff's ability to recover damages against an employer. In particular, § 15657.5 provides: "The standards set forth in subdivision (b) of Section 3294 of the Civil Code regarding the imposition of punitive damages on an employer based upon the acts of an employee shall be satisfied before any damages or attorney's fees permitted under this section may be imposed against an employer." See Welf. & Inst. Code § 15657.5(b)(2). As set forth infra in the Court's discussion of plaintiff's punitive damages claim, the record presented herein is insufficient to raise a triable issue as to defendants' liability for punitive damages under Civil Code §3294(b). Consequently, as defendants argue, the limitation provided in § 15657.5(b)(2) is applicable to plaintiff's claim. The question remaining is the extent of such limitation.

Although the limitation at issue appears only in subdivision (b) of § 15657.5, the Court finds the limitation is applicable to the statute as a whole.[2] First, the provision makes

---

[2] Section 15657.5 reads in its entirety:

(a) Where it is proven by a preponderance of the evidence that a defendant is liable for financial abuse, as defined in Section 15610.30, in addition to all other remedies otherwise provided by law, the court shall award to the plaintiff reasonable attorney's fees and costs. The term "costs" includes, but is not limited to, reasonable fees for the services of a conservator, if any devoted to the litigation of a claim brought under this article.

(b) Where it is proven by a preponderance of the evidence that a defendant is liable for financial abuse, as defined in Section 15610.30, and where it is proven by clear and convincing evidence that the defendant has been guilty of recklessness, oppression, fraud, or malice in the commission of the abuse, in addition to reasonable attorney's fees and costs set forth in subdivision (a) and all other remedies otherwise provided by the law, the following shall apply:

11

express reference to "this section," not "this subdivision." Moreover, if the limitation were deemed to apply only to subdivision (b), such construction would produce an incongruous result. Specifically, a plaintiff who made a lesser showing of an employee's liability, i.e., by a preponderance of the evidence under subdivision (a), could recover attorney's fees against the employer under a traditional theory of vicarious liability, whereas a plaintiff who made a greater showing of liability, i.e., by clear and convincing evidence under subdivision (b), could not. Consequently, plaintiff is not entitled to an award of attorney's fees or to the enhanced damages permitted under § 15657.5.

Contrary to defendants' argument, however, defendants have not shown plaintiff is entitled to no damages or relief on his elder abuse claim. As noted, the limitation in § 15657.5 is as to "damages or attorney's fees <u>permitted under this section</u>." <u>See</u> § 15657.5(b)(2) (emphasis added). The attorney's fees and enhanced compensatory damages, i.e., damages unlimited by Civil Code § 377.34, provided by § 15657.5 are expressly designated as remedies "in addition to all other remedies <u>otherwise</u> provided by law." <u>See</u> Welf. & Inst. Code § 1567.5(a), (b) (emphasis added). Section 15657.5 does not purport to describe or provide for such other remedies. <u>See</u>, <u>e.g.</u>, Cal. Civ. Code § 3333 ("For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not.").

Accordingly, defendants are entitled to summary judgment on plaintiff's claim for attorney's fees and enhanced damages under the Elder Abuse Act; in all other respects,

---

(1) The limitations imposed by Section 377.34 of the Code of Civil Procedure on the damages recoverable shall not apply.

(2) The standards set forth in subdivision (b) of Section 3294 of the Civil Code regarding the imposition of punitive damages on an employer based upon the acts of an employee shall be satisfied before any damages or attorney's fees permitted under this section may be imposed against an employer.

(c) Nothing in this section affects the award of punitive damages under Section 3294 of the Civil Code.

defendants are not entitled to summary judgment on plaintiff's claim for compensatory damages.

### 2. Punitive Damages

Defendants contend plaintiff cannot recover punitive damages against them. As set forth above, defendants' potential liability herein is based on their status as principals and the acts of Tiano as their agent. Under such circumstances, punitive damages are available only if an "officer, director, or managing agent" of defendants "had advance knowledge of the unfitness of the employee and employed him . . . with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct . . . or was personally guilty of oppression, fraud, or malice." See Cal. Civ. Code § 3294(b). No evidence sufficient to support such a finding has been offered herein.

In particular, there is no evidence showing defendant insurance companies had any advance knowledge with respect to Tiano or any familiarity with Fusako Sakai's financial needs or goals, nor is there any evidence that defendants engaged in any conduct relevant to this matter other than to authorize Tiano to sell their products to the general public and to provide Fusako Sakai with various form notices upon the imminent maturity of the subject annuity. (See, e.g., Harrington Decl. Exs. 2, 3.) Tellingly, neither of plaintiff's experts suggests any impropriety with respect to the manner in which defendant insurance companies either conducted their business as a general matter or in the particular instance at issue herein. (See Crom Decl.; McCann Decl.) Rather, their criticism is leveled exclusively at Tiano.

Although plaintiff points out that the Elder Abuse Act authorizes an award of punitive damages based on "recklessness," see Calf. Welf. & Inst. Code § 15657.5(b), the Act also makes clear that California Civil Code § 3294(b) nonetheless remains applicable. See Cal. Civ. Code § 1567.5(b)(2) ("The standards set forth in subdivision (b) of Section 3294 of the Civil Code regarding the imposition of punitive damages on an employer based upon the acts of an employee shall be satisfied before any damages or attorney's fees permitted under this section may be imposed against an employer."). Consequently, even if plaintiff

can show Tiano acted with recklessness, plaintiff would have to show that an "officer, director, or managing agent" of defendants "had advance notice" of Tiano's unfitness, or "authorized or ratified [his] wrongful conduct . . . or was personally guilty of oppression, fraud, or malice." See Cal. Civ. Code § 3294(b). As noted the record before the Court contains no such evidence.

Accordingly, defendants are entitled to summary judgment on plaintiff's claim for punitive damages.

## CONCLUSION

For the reasons stated, defendants' motion for summary judgment is hereby GRANTED in part and DENIED in part as follows:

1. The motion is GRANTED with respect to plaintiff's claim for enhanced damages and attorney's fees under the Elder Abuse Act;

2. The motion is GRANTED with respect to plaintiff's claim for punitive damages;

3. In all other respects, the motion is DENIED.

A Case Management Conference is hereby SET for October 17, 2008 at 10:30 a.m.; a Joint Case Management Statement shall be filed no later than October 10, 2008.

**IT IS SO ORDERED.**

Dated: September 10, 2008

MAXINE M. CHESNEY
United States District Judge